ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JUAN RAMON TORRES MONTALVO<br><br>EX PARTE<br><br>APELANTE<br><br>JUAN MALDONADO TORRES<br>JOSE NICOLAS MALDONADO<br>NILDA MALDONADO<br><br>PARTE INTERVENTORA<br><br>APELADOS | TA2026CE00433 | *Certiorari* acogido como *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Caso Núm.: AR2023CV00621<br><br>Sobre: Expediente de Dominio Contradictorio |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2026.

Comparece ante nos el señor Juan Ramón Torres Montalvo (en adelante, peticionario o señor Torres Montalvo) mediante una petición de *Certiorari* presentada el 9 de abril de 2026 y solicita que revisemos la *Resolución* emitida y notificada el 19 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, TPI o foro primario). Mediante el referido dictamen, el TPI denegó la petición de expediente de dominio contradictorio presentada por el apelante.

Toda vez que se recurre de una determinación final, acogimos el recurso como una *Apelación* y ordenamos la continuación de los trámites con el alfanumérico asignado por secretaria.

**I**

El 13 de abril de 2023, el señor Torres Montalvo presentó una *Petición*[1] de expediente de dominio contradictorio solicitando que se declarara justificado a su favor el dominio de la siguiente finca:

> **RUSTICA**: Predio de terreno en el Barrio Hato Viejo en la carretera PR-626 a la altura del Km. 5.3 del término municipal de Arecibo, Puerto Rico, con una cabida superficial de 833.8937 m.c., equivalente a 0.2122 cds. En lindes al **NORTE**, en tres (3)alineaciones que suman diecinueve punto setecientos sesenta y dos metros lineales (19.762 m.l.), que comprende los puntos 25, al 30 con Manuel Torres; al **ESTE** en cinco (5) alineaciones discontinuas que suman treinta y siete punto cero veintiocho (37.028 m.l.) metros lineales que comprende los puntos treinta (30) al cuatro al cuatro (4) con Javier Torres Medina y los puntos cuatro (4) al sesenta y ocho (68) que suman catorce punto cuatrocientos diecinueve (14.419 m.l.) y la línea discontinua de los puntos 67 a 66, que consta de dos punto ochocientos setenta y seis (2.876 m.l.) con la Sucn. de Torres Rivera, representados por Eduardo Torres Martínez; al **SUR**, con una alineación discontinua que suma treinta y cinco puntos ciento ochenta y cuatro metros lineales (35.184 m.l.) que comprende los punto 66 al 60, con faja de futuro ensanche de carretera PR-626 y al **OESTE**, con tres (3) alineaciones que suman veinticinco puntos cero ochenta y cuatro (25.084 m.l.) que comprende los puntos 60 al 25 con Manuel Torres.

> Contiene estructura de uso residencial de dos (2) plantas la primera (1ra) planta consiste de cuatro (4) cuartos dormitorios, dos (2) servicios sanitarios, sala, cocina, comedor, Wolking closet, laundry, balcón y terraza consiste de un área interna efectiva de un mil ciento cincuenta y cuatro punto novecientos ochenta y cinco pies cuadrados (1154.985 pies cuadrado) y la segunda (2da) planta consiste en un baño, sala y cocina, balcón y Wolking closet con área interna efectiva de dos mil ciento veinticuatro punto dos cientos ochenta y dos pies cuadrados (2124.282 pies cuadrados).

En síntesis, el peticionario alegó que adquirió el predio en el año 1992 de su padre, Ramón Torres Pabón, quien a su vez lo había heredado de Nicolás Torres, abuelo del peticionario. Sostuvo que la adquisición se verificó por la suma de $3,000.00, aunque no se preparó documento de compraventa, por lo que acompañó una declaración jurada suscrita por su madre, la señora Erenia Montalvo Torres, el 31 de agosto de 2021, en la que esta informa la venta del terreno a su hijo.[2] Asimismo, alegó haber poseído el predio pública,

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[2] Véase Anejo en la Entrada Núm. 1 del SUMAC del TPI.

pacífica e ininterrumpidamente desde el año 1992, en concepto de dueño, y que junto a la posesión ejercida previamente por su padre y su abuelo acumulaba más de setenta y cinco (75) años de posesión continua. También sostuvo que el predio reclamado no estaba inscrito en el Registro de la Propiedad y que no constituía una segregación reciente, pues, según alegó, de haber existido segregación esta ocurrió antes del año 1930. Además, alegó que la propiedad tenía un valor total de $150,000.00.

En la *Petición* se incluyó un listado de "peticionados" que se identificaron como personas a ser emplazadas personalmente[3], personas a notificarse mediante edicto[4], personas con interés cuyo paradero se desconocía[5] y personas ignoradas o público en general que pudieran verse afectados por la inscripción solicitada. Surge del expediente que posteriormente se expidieron múltiples citaciones y emplazamientos personales, así como edictos dirigidos a las personas identificadas en la *Petición*.

El 8 de agosto de 2023, el Lcdo. Juan Maldonado Torres (en adelante, Lcdo. Maldonado Torres o parte interventora) compareció por derecho propio, por sí y en representación de la Sucesión de Nilda Maldonado, compuesta por Alid, Vania, Francisco, José Nicolas, de apellidos Maldonado Torres, José Quiñones y Juan Israel Torres Medina, y presentó una *Moción en Oposición a*

---

[3] Estas son: Ada Nelly Trujillo González, Alberto Torres Molina, Blanca Torres Rivera, Edgardo Torres Martínez, Elvinia González Torres, Exavier Torres Martínez, Héctor Daniel Torres, Hilario Torres Rivera, Irma González Torres, Iván Trujillo González, Janessa Marie Torres, Jimmy Villalobos González, José N. Maldonado Torres, **Juan (Johnny) Maldonado Torres**, Margarita Torres Molina, Nilda H. Maldonado Torres, Ramón Torres Rivera, Raül Torres Rivera, Rosemary Torres.

[4] Al respecto la *Petición* indica lo siguiente: "Se notifica mediante este edicto a la Sucesión de: María Torres Pabón, Juan Torres Pabón, Felipe Torres Pabón, Juan I. Martínez, Lydia Torres Torres, Marcelino Torres Pabón, Vicenta Torres Pabón, Ramón Torres Pabón, Manuel Martínez Torres, Juan I. Martínez, Lydia Torres Torres, Marcelino Torres Pabón, Eduardo Torres Martínez, Alberto Torres Rivera, Manuel Ángel Maldonado Torres, Carmen González Torres, Dany Villalobos González, Héctor Torres Rivera, Ismael Torres Rivera, Héctor Manuel Torres Ortiz, Ismael Torres Soto, Arístides Torres Montalvo, Eduardo Torres Pabón."

[5] La *Petición* los clasifica como "Peticionados con interés cuyo paradero y dirección postal se desconoce": Lizandra Villalobos, Marlyn González Torres, Manuel Ángel Maldonado Torres, Helen Torres, María del Carmen Torres; y "Peticionados sin paradero conocido, pero tienen dirección postal": Iván Trujillo González, Betzaida Trujillo González, Ada Nelly Trujillo González.

*Solicitud de Expediente de Dominio*[6]. En esencia, alegó que los comparecientes eran herederos en sustitución de Basilisa Torres Pabón y María del Pilar Torres Pabón, quienes, según expuso, eran hijas de Candelaria Pabón Pérez, a quien identificó como la dueña del terreno en controversia.

En su moción, la parte interventora aceptó que el peticionario construyó y era poseedor de buena fe de una estructura de cemento que ubica sobre la propiedad. No obstante, negó varias de las alegaciones de la petición, incluyendo las relacionadas a la posesión alegada y al cumplimiento de los requisitos legales. Además, sostuvo que faltaban partes indispensables y alegó que no se había cumplido con la reglamentación de la Oficina de Gerencia de Permisos (OGPe) para dividir la finca y asignar participaciones.

Más adelante, el 8 de diciembre de 2023, el Lcdo. Maldonado Torres presentó una *Moción Informativa*[7] mediante la cual acompañó folios de inscripción del Registro de la Propiedad relacionadas con la finca número 1,132 localizada en el Barrio Hato Viejo de Arecibo, a los fines de demostrar quién era la dueña de dicha finca.

Ese mismo día, 8 de diciembre de 2023, se celebró una *Vista de Dominio* mediante videoconferencia.[8] Compareció la parte peticionaria; el Lcdo. Maldonado Torres, por derecho propio y como representante legal de sus hermanos, José Nicolás Maldonado y Nilda Maldonado; y el Ministerio Público. Durante la vista, el Lcdo. Maldonado Torres argumentó que faltaban partes indispensables y solicitó término para contratar representación legal. Por su parte, el representante legal del peticionario solicitó que se informaran los nombres de las partes indispensables que alegadamente faltaban para poder incluirlas en el proceso. El foro primario expresó que no podía emitir un expediente de dominio si existía una parte que quería ser escuchada y que, de existir duda, no podía adjudicarse el dominio al solicitante. Como

---

[6] Entrada Núm. 23 del SUMAC del TPI.
[7] Entrada Núm. 41 del SUMAC del TPI.
[8] Véase *Minuta* en la Entrada Núm. 43 del SUMAC del TPI.

resultado de la vista, el TPI, entre otras cosas, ordenó a la parte interventora aclarar y presentar evidencia de quiénes podrían tener derecho a objetar.[9]

El 27 de diciembre de 2023, el peticionario presentó una *Solicitud de Orden para Cumplimiento de Otra del Tribunal*[10], requiriendo que el Lcdo. Maldonado Torres informara los nombres y direcciones de las alegadas partes indispensables y de los herederos que, según había alegado, faltaban por incluir en el procedimiento. Posteriormente, el 19 de junio de 2024, el señor Torres Montalvo presentó una *Moción Informativa*[11] en la cual señaló, entre otros asuntos, que la parte interventora le había remitido el listado de las personas que debían ser incluidas en el caso. Más adelante, el 19 y 24 de septiembre de 2025, el peticionario radicó dos mociones solicitando que se expidiera el edicto para notificar a las personas indicadas por la parte interventora.[12] Así las cosas, el 25 de septiembre de 2025, se expidió el *Edicto Enmendado #DOS (2)*[13].

En cumplimiento con varias órdenes del TPI sobre que las partes debían cargar y anejar a SUMAC toda la prueba documental que pretendían utilizar en la vista evidenciaría, la parte peticionaria sometió un plano y una certificación de mensura preparados por el agrimensor Edwin Crespo Cuevas.[14]

Luego de varios incidentes procesales, el 19 de diciembre de 2025, el señor Torres Montalvo presentó una *Solicitud de Autorización de Enmienda a Petición Original*[15] acompañada de una *Petición Enmendada (1ra)*. En síntesis, el peticionario alegó que revisó la petición original luego de recibir copia de la inscripción registral de la finca 1,132 de Arecibo y que advirtió que no se

---

[9] Entrada Núm. 46 del SUMAC del TPI.
[10] Entrada Núm. 44 del SUMAC del TPI.
[11] Entrada Núm. 56 del SUMAC del TPI.
[12] Entradas Núm. 138 y 140 del SUMAC del TPI.
[13] Entrada Núm. 143 del SUMAC del TPI.
[14] Véanse Anejos en las Entradas Núm. 145 y 147 del SUMAC del TPI.
[15] Entrada Núm. 162 del SUMAC del TPI.

había incluido la descripción de la finca principal de la cual alegadamente se segregó el predio reclamado.

En la *Petición Enmendada (1ra)* se alegó que la finca principal de la cual se segregó el predio solicitado estaba inscrita en el Registro de la Propiedad, bajo el número de finca 1,132 de Arecibo, con cabida de cien (100) cuerdas, inscrita a favor de Candelaria Pabón Pérez. Asimismo, se reiteró que el peticionario reclamaba un predio segregado de dicha finca, que Nicolás Torres lo había segregado y delimitado para los años de 1930 y que el peticionario lo había adquirido de sus padres en 1992. A esos efectos, el peticionario solicitó al foro primario que:

> "[D]eclare justificado el dominio de la propiedad, disponga para que el agrimensor radique ante la Oficina de Gerencia y Permisos local en Arecibo, Puerto Rico la solicitud de segregación del predio de 833.8937 m. c. equivalentes a 0.2122 cds. Para constituirla en una propiedad separada e independiente de la finca principal ya que el peticionario en virtud de la prescripción regulada por lo dispuesto al Art. 777 de la Ley 55 de 2020 la posesión y en consideración a los términos dispuestos en el Art. 788 de la ley 55 (supra) tiene derecho a obtener autorización para inscribir al Registro de la propiedad su título prescriptivamente adquirido."

Ese mismo día, las partes presentaron un *Informe de Conferencia con Antelación a la Vista*[16] en el cual el peticionario, entre otros asuntos, anunció como perito al Ing. Edwin Crespo Cuevas. En dicho informe, la parte peticionaria no realizó un resumen sobre el testimonio del perito.

El 11 de marzo de 2026 se celebró la vista evidenciaria.[17] Durante la vista se tomó juramento a los testigos de la parte peticionaria siendo estos: el señor Torres Montalvo, Wanda Ivette Torres Montalvo, Eduardo Torres Martínez y Melvin Torres Gaud. Además, la parte peticionaria presentó como prueba de identificación un plano de mensura, el cual fue ofrecido, pero no admitido. Una vez culminado el desfile de la prueba testifical, el representante legal del peticionario solicitó otro señalamiento para traer como testigo al

---

[16] Entrada Núm. 163 del SUMAC del TPI.
[17] Véase *Minuta* en la Entrada Núm. 176 del SUMAC del TPI.

perito, a lo cual la representación legal de la parte interventora se opuso. El TPI resolvió que el peticionario debió cerciorarse de tener los testigos idóneos antes de comenzar su caso y expresó que el plano de mensura no podía autenticarse con su propio testimonio. En consecuencia, determinó que la prueba presentada quedaba sometida, pero no admitida.

Posteriormente, el 19 de marzo de 2026, el foro primario emitió una *Resolución*[18] mediante la cual denegó la petición de expediente de dominio. En síntesis, el TPI concluyó que la parte peticionaria incumplió con las órdenes emitidas sobre la presentación de la prueba documental y que intentó autenticar el plano de mensura mediante el testimonio del peticionario y no mediante el testigo idóneo, el agrimensor.

Por lo anterior, el TPI determinó que:

"El caso sometido sufre del defecto de que no tiene de una manera fehaciente una descripción exacta de la propiedad porque el documento que se pretendía presentar como exhibit no se pudo admitir y ese era el documento que tenía la dirección exacta de la propiedad. Sin la descripción exacta de la propiedad, única y exclusivamente con el testimonio del peticionario, no se cumple con la Ley para el Registro de la Propiedad Inmobiliaria Núm. 210 del 2015 [...].

Por las razones y motivos antes expresadas, y basándose este Tribunal en expresión reciente del Tribunal Supremo de Puerto Rico y en lo que sugiere jurisprudencia del Tribunal de Apelaciones, este tribunal entiende que la falta de una descripción exacta de la propiedad es un defecto mayor, por lo cual mediante la presente Resolución se deniega la petición de expediente de dominio contradictorio, según presentado."

El 27 de marzo de 2026, el peticionario presentó una *Reconsideración de Sentencia*[19]. Alegó que el agrimensor no compareció debido a circunstancias relacionadas con la realización de otra mensura; que el foro primario fue informado de la situación; y que la exclusión del plano incidía sobre la mensura y segregación alegada del predio.

Ese mismo día, el TPI declaró No Ha Lugar la reconsideración.[20]

---

[18] Entrada Núm. 179 del SUMAC del TPI.
[19] Entrada Núm. 180 del SUMAC del TPI.
[20] Entrada Núm. 181 del SUMAC del TPI.

Inconforme, el 9 de abril de 2026, el peticionario presentó el recurso de epígrafe y plantea el siguiente señalamiento de error:

**Primer señalamiento de error: Erró el Tribunal de Primera Instancia, Sala Superior de Arecibo y abusó de su discreción al excluir el testimonio del perito anunciado, Ing. Edwin Crespo Cuevas, como primera sanción ante la incomparecencia de este por causa no atribuibles al peticionario, aun conociendo el Tribunal que era un testigo esencial para la reclamación del peticionario, pues este testificaría sobre la descripción exacta de la propiedad en cuestión.**

En esencia, alegó que el TPI abusó de su discreción al excluir el testimonio del agrimensor Edwin Crespo Cuevas, a quien describió como un testigo esencial para establecer la descripción exacta de la propiedad en cuestión.

El 10 de abril de 2026, este Tribunal emitió una *Resolución*[21] mediante la cual concedió a la parte un término de diez días para informar si se proponía reproducir la prueba oral desfilada ante el foro primario o presentar una transcripción y para informar si presentaría alegato suplementario.

El 14 de abril de 2026, el señor Torres Montalvo presentó una *Moción en Cumplimiento de Orden*[22] mediante la cual informó que no interesaba reproducir la prueba oral ni presentar transcripción, por entender que el señalamiento de error no versaba sobre la apreciación de la prueba oral, sino sobre la exclusión del testimonio del agrimensor y la determinación recurrida que declaró No Ha Lugar la petición de expediente de dominio.

Transcurrido el término concedido a la parte interventora para exponer posición sobre el recurso, procedemos a resolver.

## II

### A. Expediente de Dominio Contradictorio

El expediente de dominio constituye un procedimiento especial contemplado en la Ley del Registro de la Propiedad Inmobiliaria del Estado

---

[21] Entrada Núm. 2 del SUMAC del TA.
[22] Entrada Núm. 3 del SUMAC del TA.

Libre Asociado de Puerto Rico, Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001 *et seq.* (en adelante, Ley Núm. 210-2015), mediante el cual el propietario que carece de título inscribible puede inscribir su derecho, independientemente de la fecha de adquisición. *Torres, Cabrera, Ex Parte,* 2025 TSPR 5, 215 DPR ___ (2025); Luis Rafael Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño,* 3ra ed., San Juan, Jurídica Editores, 2012, pág. 338. Dicho procedimiento constituye un trámite judicial *ex parte* que no declara derechos, sino que se limita a justificar el dominio del promovente. Rivera Rivera, *op cit.,* pág. 342. En consecuencia, la función del juzgador se circunscribe a determinar si el dominio quedó o no justificado. *Id.*

Mientras no exista controversia entre partes conocidas y determinadas, el expediente de dominio conserva su naturaleza *ex parte* y la resolución emitida no constituye cosa juzgada, ya que nada impide que posteriormente los interesados presenten un juicio declarativo. *Torres, Cabrera, Ex Parte, supra.* No obstante, **cuando dentro del expediente de dominio surge una controversia respecto a la validez del título o de los derechos dominicales del promovente, esta deberá dilucidarse dentro del propio procedimiento, el cual pierde su carácter *ex parte* y se convierte en un juicio contencioso ordinario**. *Id.*; *Ríos v. Tribunal Superior,* 77 DPR 79, 83 (1954); *Rodríguez v. Registrador,* 75 DPR 712, 731 (1953). (Énfasis nuestro).

El Artículo 183 de la Ley Núm. 210-2015 establece que, cuando el dueño de una finca inscrita o de un derecho real sobre ésta no aparezca como titular registral, deberá instar acción ordinaria contra los que aparecen del Registro como titulares. 30 LPRA sec. 6282. Ello con el propósito de obtener una sentencia favorable que permita inscribir en el Registro de la Propiedad su titularidad sobre el inmueble. *Id.* En casos de reanudación de tracto, también deberán hacerse constar los titulares intermedios y estos deberán ser citados conforme al inciso 2 del Artículo 185 de esta Ley. *Id.*

De otra parte, el Artículo 185 de la Ley Núm. 210-2015 dispone que todo propietario que carezca de título inscribible de dominio, podrá inscribirlo si cumple con los siguientes requisitos:

1. Presentará un escrito jurado en la sala del Tribunal de Primera Instancia correspondiente al lugar en que radiquen los bienes, o en la de aquél en que radique la porción de mayor cabida cuando se trate de una finca que radique en varias demarcaciones territoriales. Si se presenta el escrito ante una sala sin competencia, el tribunal de oficio, lo trasladará a la sala correspondiente. El escrito contendrá las siguientes alegaciones:

a. Nombre y circunstancias personales del promovente y de su cónyuge, si lo tuviera, al momento de adquirir la propiedad y al momento de hacer la solicitud, si hubiera alguna diferencia.

b. La descripción exacta de la propiedad con sus colindancias y cabida de acuerdo a los títulos presentados. De haberse practicado alguna mensura, deberá contener la cabida y colindancias que hayan resultado de la misma. Si la finca se formó por agrupación, deberán además, describirse individualmente las fincas que la integraron, y si fue por segregación se describirá la finca principal de la cual se separó.

c. Número de Catastro según aparece en el Centro de Recaudación de Ingresos Municipales.

d. Expresión de que la finca, así como las fincas constituyentes en caso de tratarse de una agrupación, o la finca de la que proviene si se trata de una segregación, no constan inscritas en el Registro de la Propiedad.

e. Una relación de las cargas que gravan la finca por sí o por su procedencia. En caso de no existir cargas, se expresará que está libre de cargas.

f. Una relación de los anteriores dueños conocidos con expresión de las circunstancias personales del inmediato anterior dueño.

g. El modo en que adquirió del inmediato anterior dueño.

h. El tiempo que el promovente y los dueños anteriores han poseído la propiedad de manera pública, pacífica, continua y a título de dueños.

i. El hecho de que la finca, o en caso de agrupación, las que la componen, mantuvieron la misma cabida y configuración durante los términos que disponen los Artículos 1857 y 1859 del Código Civil de Puerto Rico para que operen los efectos de la prescripción adquisitiva. **Si la finca resulta ser una segregación de una finca de mayor cabida que consta inscrita, la segregación tiene que haber sido aprobada por la agencia gubernamental correspondiente mediante plano de inscripción. No**

**constituirá justo título a los efectos de este Artículo, un título de dominio sobre una porción pro indivisa en una finca no segregada, ni el título que recae sobre una finca segregada de una finca inscrita en el registro.**

j. El valor actual de la finca.

k. Las pruebas legales que se dispone presentar.

l. Las demás alegaciones que en derecho procedan en cada caso.

2. El promovente notificará personalmente o por correo certificado con copia de su escrito a los siguientes:

a. Alcalde del municipio en que radiquen los bienes.

b. Secretario de Transportación y Obras Públicas.

c. Fiscal de Distrito.

d. Las personas que están en la posesión de las fincas colindantes.

**El tribunal ordenará la citación personal de los siguientes:**

**a. El inmediato anterior dueño o sus herederos si fueren conocidos en caso de no constar en escritura pública la transmisión. Se entenderá como inmediato anterior dueño, en el caso de que los promoventes sean herederos, aquel de quien el causante adquirió la propiedad.**

**b. Los que tengan cualquier derecho real sobre la finca objeto del procedimiento.**

**El tribunal ordenará la citación mediante edicto de los siguientes:**

**a. Las personas ignoradas o desconocidas a quienes pueda perjudicar la inscripción solicitada.**

**b. Los que están ausentes pero de no estarlo debían ser citados en persona y cuyo paradero se desconoce al tiempo de hacerse la primera publicación del edicto se les enviará copia de la citación por correo certificado y con acuse de recibo, a su última dirección conocida. Si se ignora su paradero y así queda probado, se les citará exclusivamente mediante el referido edicto.**

3. Forma, plazo y contenido del edicto:

**El edicto se publicará en tres (3) ocasiones dentro del término de veinte (20) días en un periódico de circulación general diaria en Puerto Rico, a fin de que comparezcan si quieren alegar su derecho.**

Deberá contener la descripción de la finca que será objeto de inmatriculación y de tratarse de una finca agrupada, las descripciones de las fincas que la comprenden.

En el plazo improrrogable de veinte (20) días a contar de la fecha de la última publicación del edicto, los interesados y/o las partes citadas, o en su defecto los organismos públicos afectados, podrán comparecer ante el tribunal, a fin de alegar lo que en derecho proceda.

4. La intervención del Secretario de Transportación y Obras Públicas, o en su defecto, de los organismos públicos afectados, se limitará a mantener la defensa de cualesquiera derechos existentes a favor del Estado. La intervención del alcalde del municipio en que radiquen los bienes, se limitará a mantener la defensa de cualesquiera derechos existentes a favor del municipio que se trate. El Ministerio Fiscal velará, además, por el debido cumplimiento de la ley.

5. **Previo al señalamiento de vista en su fondo, el promovente unirá al expediente judicial una certificación negativa acreditativa de que la finca objeto del procedimiento, no aparece inscrita a nombre de persona distinta al promovente.**

**La fecha de la referida certificación negativa no deberá ser anterior a diez (10) días previos a la presentación de la solicitud de Expediente de Dominio.**

Cuando el Registrador no pueda concluir con certeza que la finca o parte de ésta no consta inscrita, denegará la Certificación Registral y así lo hará constar al Tribunal. 30 LPRA sec. 6291. (Énfasis nuestro).

Por su parte, el Artículo 190 de la Ley Núm. 210-2015 atiende los casos en que el inmediato anterior dueño ha fallecido, en cuyo caso "el promovente expresará en el escrito inicial los nombres de los herederos. De no conocer sus nombres, expresará que son personas ignoradas o desconocidas." 30 LPRA sec. 6296.

En cuanto al requisito de notificación y citación de las personas identificadas en los artículos antes citados, la Regla 185.1 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 8814 del Departamento de Justicia (en adelante, Reglamento del Registro de la Propiedad), dispone que "[l]as citaciones personales dispuestas en el inciso 2 del Artículo 185 de la Ley [del Registro de la Propiedad Inmobiliaria] se practicarán en la forma en que las Reglas de Procedimiento Civil vigentes dispongan." Es decir, los requisitos de emplazamiento por edicto que deberán

cumplirse son los contenidos entre las Reglas 4.6 y 4.8 de Procedimiento Civil. *Id.* Véase, también, Reglas 4.6-4.8 de Procedimiento Civil, *supra.*

El Art. 187 de la Ley Núm. 210-2015 dispone que, una vez transcurrido el término de veinte (20) días luego de la publicación del edicto, y a solicitud de la persona promovente, el tribunal de instancia celebrará una vista para atender las reclamaciones y pruebas presentadas. 30 LPRA sec. 6293. De no existir oposición, la persona promovente presentará la prueba dirigida a acreditar el cumplimiento con los requisitos enumerados en el Artículo 185 antes citado. *Id.* Satisfecho lo anterior, el foro primario, a la luz de las alegaciones formuladas por la persona promovente y las demás personas interesadas, y evaluada la prueba presentada, determinará si quedó justificado el dominio sobre los bienes objeto del procedimiento. *Id.*

Nuestro Tribunal Supremo ha expresado que los requisitos legales contenidos en el Art. 185 de la Ley Núm. 210-2015, *supra*, para la tramitación de un expediente de dominio son esenciales y de cumplimiento estricto. *Torres, Cabrera, Ex Parte, supra*; *Nieves Osorio, Ex Parte*, 127 DPR 907, 909 (1991), citando a *Álvarez Rivera v. Registrador*, 84 DPR 229, 229-230 (1961).

Por otra parte, el Art. 191 de la Ley Núm. 210-2015 dispone que, si dentro del expediente de dominio surge una controversia sobre la validez del título o de los derechos dominicales del peticionario y alguna de las personas citadas sostiene que posee mejor título que el solicitante, "**se entenderá convertido el procedimiento de expediente de dominio en un juicio contencioso ordinario**". 30 LPRA sec. 6297. (Énfasis nuestro). Además, añade que "**[e]l expediente de dominio se utilizará para justificar el dominio y no equivale a una acción declaratoria de usucapión**." *Id.* (Énfasis nuestro).

Por último, la Regla 192.1 del Reglamento del Registro de la Propiedad dispone que:

> **En los casos de contradicción de dominio de finca inscrita a favor de persona distinta al demandante o de**

> **reanudación de tracto, será preciso acreditar ante el Tribunal, mediante certificación registral expedida con posterioridad a la demanda, que la finca aparece inscrita a favor del demandado.**
>
> En los casos de contradicciones de dominio, de recaer sentencia a favor del demandante, el Tribunal ordenará la cancelación de los asientos posteriores que se hayan podido extender con sujeción a lo dispuesto en los Artículos 51, 114 y 115 de la Ley mediante orden certificada y mandamiento donde se señalen con particularidad los asientos a ser cancelados. (Énfasis nuestro).

### B. Parte indispensable

Como parte de las garantías del debido proceso de ley, resulta necesario acumular a todas las personas que posean un interés común en el pleito. *Pérez Ríos et al. v. CPE*, 213 DPR 203, 212 (2023). Ello responde a dos principios fundamentales: "(1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo." *Id.*; *RPR & BJJ, Ex Parte*, 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993).

La Regla 16.1 de Procedimiento Civil dispone que aquellas personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia deberán hacerse parte y acumularse como demandantes o demandadas, según corresponda. 32 LPRA Ap. V, R. 16.1.

El interés común al que alude la referida regla no comprende cualquier interés relacionado con el pleito, sino uno de tal naturaleza que impida adjudicar el derecho reclamado sin afectar los derechos de las personas ausentes que tengan interés en la controversia. *López García v. López García*, 200 DPR 50, 64 (2018). Además, el interés afectado debe ser real e inmediato, al punto de impedir la emisión de un decreto adecuado, ya que, conforme a la Regla 16.1, *supra*, una parte indispensable es aquella cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados de dictarse sentencia en su ausencia. *Id.*, pág. 63.

**La ausencia de una parte indispensable priva al tribunal de jurisdicción sobre el pleito y, en consecuencia, cualquier sentencia emitida será nula, procediendo la desestimación de la reclamación sin entrar en los méritos de la controversia.** *Pérez Ríos et al. v. CPE, supra.* (Énfasis nuestro).

Cónsono con lo anterior, un tribunal únicamente adquirirá jurisdicción sobre una persona cuando esta haya sido debidamente emplazada, conforme a las exigencias constitucionales del debido proceso de ley. *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 646-647 (2021), citando a *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 644 (2018); *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 467 (2017); *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374 (2000); *First Bank of PR v. Inmob. Nac. Inc.*, 144 DPR 901, 913 (1998). De esa manera, la parte demandada podrá comparecer ante el tribunal, ejercer su derecho a ser oída y presentar sus defensas. *Bernier González v. Rodríguez Becerra, supra.*

De no haberse efectuado el emplazamiento conforme a derecho, el foro primario deberá declarar su falta de jurisdicción y desestimar la reclamación sin entrar en los méritos. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 269 (2018). Del mismo modo, si un tribunal dicta sentencia sin que el demandado haya sido correctamente emplazado conforme a ley, dicho dictamen será nulo. *Álvarez v. Arias*, 156 DPR 352, 366-367 (2002).

### C. Manejo del caso

Es doctrina reiterada que los jueces de instancia gozan de amplia discreción y flexibilidad en el manejo cotidiano y la tramitación de los asuntos que se ventilan ante sus salas. *BPPR v. SLG Gómez-López*, 213 DPR 314, 334 (2023); *In re Collazo I*, 159 DPR 141, 150 (2003); *Vives Vázquez v.* ELA, 142 DPR 117, 141 (1996). La deferencia a su criterio responde al principio de que los tribunales apelativos no deben sustituir ni dirigir la conducción del trámite ordinario de los casos que corresponden al foro primario. *BPPR v. SLG*

*Gómez-López, supra,* citando a *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012). Como es sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para adoptar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Id.* En consecuencia, la norma general dispone que los foros apelativos no intervendrán en la discreción de los foros primarios, salvo que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-López, supra*, pág. 334; *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021).

## D. Informe preliminar entre abogados y abogadas y la Conferencia con antelación a juicio

La Regla 37.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.4, dispone que, en aquellos casos señalados para conferencia con antelación al juicio, los abogados o las abogadas de las partes deberán reunirse entre sí por lo menos quince (15) días antes de la fecha pautada para la conferencia, con el propósito de preparar un *Informe preliminar entre abogados y abogadas* que incluya, entre otros asuntos, lo siguiente:

> [...]
>
> (b) Una breve relación de los hechos pertinentes a las reclamaciones o defensas de las partes. Si se reclaman daños, un desglose detallado de éstos.
>
> (c) Estipulaciones sobre los hechos, documentos y asuntos sobre los cuales no exista controversia y que eviten la presentación de evidencia innecesaria.
>
> (d) Una exposición breve de la posición de las partes con respecto a los hechos, documentos y asuntos sobre los cuales exista controversia y la base legal que apoye tal posición.
>
> (e) Un resumen del derecho aplicable a los hechos específicos del caso, un resumen de las cuestiones de derecho que las partes anticipen que se plantearán o que ya se hayan planteado, señalando aquellos en que exista desacuerdo y sus opiniones, y la jurisprudencia específica aplicable.
>
> (f) Una relación detallada de la prueba documental debidamente identificada, incluso las deposiciones u otra prueba que se ofrecerá y respecto a cuya admisión en evidencia no exista controversia.

(g) Una relación de la prueba documental que ofrecerá cada parte y respecto a cuya admisión en evidencia exista controversia, incluso una sucinta exposición de los fundamentos en que se base la objeción.

(h) Una lista de cada parte con los nombres y las direcciones de las personas testigos, incluso los peritos y las peritas de ocurrencia, que testificarán en el juicio (excepto los testigos de impugnación o de refutación), incluso un resumen de su testimonio.

(i) Una lista de cada parte con los nombres de las personas peritos que testificarán en el juicio, incluyendo un resumen de su testimonio.

[…]

(m) Un estimado del número de días y horas requeridas para la presentación de la prueba de cada una de las partes en el juicio en su fondo.

El informe deberá presentarse diez (10) días antes de la conferencia con antelación al juicio. *Id.*

De otra parte, la Regla 37.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.5, dispone que la conferencia con antelación al juicio deberá celebrarse al menos treinta (30) días antes de la vista en su fondo. En dicha conferencia se atenderán, entre otros asuntos, el *Informe preliminar entre abogados y abogadas*; la adjudicación de las controversias pendientes que surjan de este, incluyendo asuntos relacionados con la admisibilidad de la prueba; y el plan para la celebración del juicio. *Id.* Una vez celebrada la conferencia, el tribunal emitirá una orden en la cual "expondrá lo acordado y dispuesto en la conferencia […]. Dicha orden […] gobernará el curso subsiguiente del pleito, a menos que sea modificada en el juicio para impedir manifiesta injusticia." *Id.*

Además, la Regla 37.4, *supra*, dispone que, salvo justa causa, no se permitirá la presentación de prueba que no haya sido previamente identificada en el informe correspondiente. De ese modo, la regla impone a las partes el deber de divulgar oportunamente toda la prueba documental y testifical que interesen presentar durante el juicio, tanto en el informe para manejo del caso como en el informe de conferencia preliminar entre abogados.

El incumplimiento con dicho deber puede dar lugar a la exclusión de prueba presentada sorpresivamente.

### E. Admisión o exclusión errónea de evidencia

Las Reglas 104 y 105 de las Reglas de Evidencia de 2009, 32 LPRA Ap. VI, R. 104-105, establecen los requisitos que debe satisfacer una parte que alegue en apelación que el tribunal de instancia excluyó indebidamente determinada evidencia. En lo pertinente, la Regla 104 dispone que:

> "(B) En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.
>
> El Tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El Tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión."

Por su parte, la Regla 105 dispone lo siguiente:

> "(a) Regla general. —No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
>
> (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 de este apéndice, y
>
> (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita."
> 32 LPRA Ap. VI, R. 105.

A tenor con lo anterior, la parte cuya evidencia haya sido excluida puede acudir en apelación y sostener que dicha exclusión fue errónea. Sin embargo, para que proceda la revocación de una sentencia por exclusión indebida de prueba, es necesario que la evidencia haya sido presentada oportunamente mediante una oferta de prueba y que el foro apelativo determine que la exclusión tuvo un efecto decisivo o sustancial sobre la

determinación recurrida. *Id.*; *FDIC v. Caribbean Mktg. Ins. Agency*, 123 DPR 247, 260 (1989); *SJ Credit, Inc. v. Ramírez*, 113 DPR 181, 190 (1982).

El propósito de efectuar una oferta de prueba y marcar la evidencia para identificación, aun cuando esta no sea admitida, es colocar al tribunal apelativo en posición de evaluar si existió un error sustancial que amerite revocación. Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Publicaciones J.T.S., 1998, Tomo II, págs. 1174-1175. Asimismo, la omisión de una oferta de prueba implica la renuncia al planteamiento apelativo. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 476 (1988).

### III

En el presente caso, el peticionario presentó un expediente de dominio contradictorio alegando ser dueño de un predio que, según sostuvo posteriormente en la *Petición Enmendada (1ra)*, surgía de una segregación realizada para la década de 1930 de la finca número 1,132 de Arecibo, alegadamente inscrita a favor de Candelaria Pabón Pérez. Asimismo, alegó haber adquirido el predio de sus padres en el año 1992 y que, junto a sus causantes, tenía más de setenta y cinco (75) años en su posesión.

No obstante, del propio expediente surge que el procedimiento dejó de tener naturaleza *ex parte* desde el momento en que comparecieron personas alegando mejor derecho sobre la finca matriz y sosteniendo la existencia de otros herederos e interesados que no habían sido incluidos en el procedimiento. Véase, Art. 191 de la Ley Núm. 210-2015, *supra*; *Torres, Cabrera, Ex Parte, supra; Ríos v. Tribunal Superior, supra*. Particularmente, la parte interventora alegó que el inmueble pertenecía a Candelaria Pabón Pérez y que comparecía en representación de herederos relacionados con dicha titular registral. Además, cuestionó la ausencia de partes indispensables y el cumplimiento con los requisitos legales aplicables.

A pesar de ello, el expediente ante nuestra consideración no contiene una certificación registral negativa de la finca que se interesa inscribir ni una

certificación registral actualizada sobre la finca matriz alegadamente inscrita, número 1,132 de Arecibo, expedida con posterioridad a la presentación de la demanda, conforme requiere la Regla 192.1 del Reglamento del Registro de la Propiedad. Tampoco surge del expediente el tracto registral completo de la finca matriz ni evidencia suficiente que permita identificar con certeza quiénes son todas las personas titulares o herederas cuyos derechos podrían verse afectados por el procedimiento.

Del mismo modo, aunque en la petición original y en la petición enmendada se identificaron diversas personas a ser emplazadas o notificadas, el expediente ante nos no contiene evidencia suficiente que acredite el cumplimiento con los requisitos de emplazamiento y notificación dispuestos en la Ley Núm. 210-2015 y en las Reglas de Procedimiento Civil, *supra,* ni que se notificara copia de la petición conforme exige el procedimiento especial de expediente de dominio contradictorio.

Asimismo, el expediente tampoco contiene evidencia suficiente respecto al tracto de titularidad del inmueble reclamado ni del modo específico mediante el cual el peticionario adquirió el predio cuya inscripción interesa. Aunque el peticionario alegó haber adquirido el inmueble de su padre y acompañó una declaración jurada suscrita por su madre, posteriormente sostuvo que el predio provenía de una segregación realizada de la finca número 1,132 de Arecibo. Sin embargo, no surge del expediente prueba suficiente dirigida a acreditar el tracto alegado ni la relación entre el predio reclamado y la finca matriz inscrita.

A ello se añade que el *Informe de Conferencia con Antelación a la Vista,* aunque aparece suscrito por ambas partes, no contiene una exposición clara respecto a la postura de la parte interventora sobre las controversias del caso ni un detalle específico del propósito del testimonio pericial anunciado. Cabe destacar, además, que del expediente no surge que el foro primario haya celebrado la conferencia para discutir el referido informe. Del mismo modo,

aunque el peticionario anunció al agrimensor Edwin Crespo Cuevas como perito, no surge del expediente que se hubiese informado al tribunal, previo a la vista evidenciaria, sobre la alegada indisponibilidad del perito, ni que se solicitara oportunamente la suspensión de la vista, ni una fecha cierta para su comparecencia posterior.

Además, el recurso ante nos plantea como error la exclusión del testimonio del agrimensor y del plano de mensura. No obstante, el expediente apelativo carece de transcripción o regrabación de la vista evidenciaria celebrada el 11 de marzo de 2026. Ello, a pesar de que este Tribunal concedió término al recurrente para informar si reproduciría la prueba oral o presentaría una transcripción y este informó que no interesaba hacerlo. Igualmente, no contamos con evidencia suficiente que permita concluir que se cumplió con los requisitos relacionados con la oferta de prueba establecidos en la Regla 104 de Evidencia, *supra*.

En conjunto, las deficiencias antes señaladas impiden concluir que el expediente de dominio contradictorio cumpliera con los requisitos esenciales y de cumplimiento estricto establecidos en la Ley Núm. 210-2015, *supra*. Particularmente, el expediente no coloca a este Tribunal en posición de determinar con certeza quiénes eran todas las personas con interés sobre el inmueble reclamado ni si estas fueron debidamente traídas al pleito. En consecuencia, concluimos que el procedimiento carecía de partes indispensables, por lo que el foro primario carecía de jurisdicción para adjudicar definitivamente la controversia y **la *Resolución* recurrida es nula**. *Pérez Ríos et al. v. CPE, supra*.

Por otro lado, aun dejando a un lado los anteriores defectos jurisdiccionales, las alegaciones y documentos que obran en el expediente resultan insuficientes para sostener el remedio solicitado mediante el procedimiento especial de expediente de dominio contradictorio. Particularmente, el expediente carece de evidencia suficiente respecto al

tracto de titularidad, las certificaciones registrales requeridas, la identificación completa de titulares e interesados y el cumplimiento con los requisitos específicos establecidos en la Ley Núm. 210-2015 y su Reglamento. En consecuencia, **procede la desestimación del procedimiento**.

**IV**

Por los fundamentos antes expuestos, **se declara nula la *Resolución*** recurrida por falta de jurisdicción ante la ausencia de partes indispensables. Asimismo, **se desestima el procedimiento de expediente de dominio contradictorio** instado por el señor Juan Ramón Torres Montalvo.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones